

# THE ATTORNEY GENERAL

## OF TEXAS

**CRAWFORD C. MARTIN**
**ATTORNEY GENERAL**

AUSTIN, TEXAS 78711

May 14, 1971

Hon. Joe Christie
The Senate of Texas
Nominations Committee
Capitol Building
Austin, Texas 78711

Dear Senator Christie:

Opinion No. M-860

Re: Qualification of Mr. Richard
Penn as employer's representa-
tive on the Industrial Accident
Board under Art. 8307, Sec. 2,
Vernon's Civil Statutes.

You ask our opinion whether Mr. Richard Penn, at the time of his appointment as the employer representative on the Industrial Accident Board, was qualified under the provisions of Article 8307, Section 2, Vernon's Civil Statutes. *

Our opinion is that he was not.

While this office is without authority to determine controverted fact questions, Attorney General Opinion No. M-847 (1971), the facts submitted to us are uncontradicted. Although they are sparse they apparently comprehend the relevant facts developed at the hearing held on April 15, 1971, before the Senate Committee on Nominations to consider confirmation of the appointment of Mr. Penn. The records submitted to us reveal the following controlling facts. On the afternoon of Friday, October 3, 1969, Mr. Penn and Mr. T. P. Flahive, President of Flahive-Ogden Company, entered into a verbal contract whereby the Company agreed to employ Mr. Penn, effective the next day, Saturday, October 4, 1969. On the afternoons of these two days these two gentlemen discussed the duties Mr. Penn would discharge. These related to a proposed re-codification of a book on Workman's Compensation which the Company proposed to draft and sell. We quote from Mr. Flahive's letter to us dated April 26, 1971, as follows:

"In connection with these plans, we had decided to start seminars explaining workmen's

* All references to Articles are to Vernon's Civil Statutes.

compensation and we went into these matters with
Mr. Penn, assigning him at that time the job of
arranging necessary facilities in Houston and
in Dallas as well as taking care of all the tech-
nical end such as programs, name tags, luncheons,
advertising and promotion that we might get into.

"We had made arrangements with Mr. Penn to
report for his full assumption of duties on Monday,
October 6. Fortunately, or unfortunately, it was
that same date that the Governor nominated him as
a member of the Industrial Accident Board. This,
of course, of necessity, terminated immediately
any employment he might have with our company."

Also submitted to us for our consideration is the affi-
davit of Senator A. R. Schwartz, dated May 4, 1971, which reads
in part:

"  . . . On April 15, 1971, in the Senate
Committee on Nominations, meeting to consider
the nomination of Mr. Richard Penn to the position
of employer member of the Industrial Accident Board,
Mr. Penn stated that he took employment with a printing
company solely for the purpose of qualifying for the
aforementioned position. Mr. Penn said his title was
executive vice president, but when asked what he did,
Penn replied, 'Nothing.'"

The Minutes of a special called meeting of the Company
held on September 15, 1969, state that Mr. Penn was named as
Executive Vice-President of the company at a compensation of
$1,000.00 per month; that the effective date of his employment
would be upon his resignation of his present employment with the
State of Texas. Also, a letter statement, accompanied by a sup-
porting copy of Wage and Tax Statement for Federal Income Tax
Information, show that Mr. Penn was paid by the Company for one
day's services in the gross amount of $46.15. The Company was a
qualified carrier of Workmen's Compensation insurance on its
employees.

The Company was an 'employer' under the definition of that term in Article 8309, Section 1.

The required qualifications for members of the Industrial Accident Board are stated in Article 8307, Section 2, as follows:

"At the time of each appointment one member of the Industrial Accident Board shall be an employer of labor in some industry or business covered by this law; . . ."

We find no decision of any court or of this Office interpreting the relevant portion of this statute. Under the relevant canons of statutory construction we must construe the statute in accordance with the legislative intent and purpose in enacting it and to effect that purpose. 53 Tex.Jur.2d Statutes, 180-187, Sec. 125, and 237-245, Sec. 163-165.

Article 8307, Section 5, of the Workmen's Compensation Act deals generally with the powers of the Industrial Accident Board in considering and awarding of claims before it. This Section 5 provides, in part:

"All questions arising under this law, if not settled by agreement of the parties interested therein and within the provisions of this law, shall, except as otherwise provided, be determined by the Board ... If any party to such final ruling and decision of the Board, after having given notice as above provided, fails within said twenty (20) days to institute and prosecute a suit to set the same aside, then said final ruling and decision shall be binding upon all parties thereto; ..."

The provisions of this Section make clear that the Board is a quasi-judicial body. Accord: 63 Tex.Jur.2d 251-254, Workmen's Compensation, Sec. 291-292, et seq. Further, as to the nature of the Workmen's Compensation Act itself, the case of Brooks v. State, 68 S.W.2d 534, 535 (Tex.Civ.App. 1934, error ref.) holds that the Act was obviously intended to apply to industrial

employment. Accord:   62 Tex.Jur.2d 543, Workmen's Compensation, Sec. 17.  With these established statements as to the nature of the Board and of the Act, and in the absence of decisions of our Texas courts, we look to the decisions of courts of other juris- dictions to aid us in determining the qualification of Mr. Penn under our Texas Act.

In Talbert v. Owen-Ames-Kimbel Co., 9 N.W.2d 572 (Mich. Sup. 1943) the court made the following holding with reference to the qualifications of a member of its state agency exercising similar powers to our Texas Industrial Accident Board:

" ... The duties and powers conferred upon
a deputy commissioner are such that he definitely
occupies a quasi-judicial position.  He is the
trier of the facts and his findings as to those
facts, if affirmed on review of the department,
are conclusive and bind this court on appeal, if
supported by any competent evidence.  The same
high standards required of judges and courts should
be applied to quasi-judicial officers, such as com-
missioners and deputy commissioners in the depart-
ment of labor and industry.   ..." (Emphasis added.)
(at p. 573).

In National Labor Relations Board v. E. C. Atkins & Co., 331 U.S. 398 (1947) the Supreme Court of the United States con- sidered the facts and circumstances requisite under the National Labor Relations Act for qualification as an employee.  The Court made reference to the Act and said:

" ... In contrast, Sec. 2(2) states that 'The
term 'employer' includes any person acting in the
interest of an employer, directly or indirectly,
...'  As we recognized in the Hearst case [National
Labor Relations Board v. Hearst Publications, 322
U.S. 111 (1944)], the terms 'employee' and 'employer'
in this statute carry with them more than the tech-
nical and traditional common law definitions.  They
also draw substance from the policy and purposes of
the Act, the circumstances and background of particu-
lar employment relationships, and all the hard facts
of industrial life.

"And so the Board, in performing its delegated functions of defining and applying these terms, must bring to its task an appreciation of economic realities, as well as a recognition of the aims which Congress sought to achieve by this statute. This does not mean that it should disregard the technical and traditional concepts of 'employee' and 'employer.' But it is not confined to these concepts. It is free to take account of the more relevant economic and statutory considerations. And a determination by the Board based in whole or in part upon those considerations is entitled to great respect by a reviewing court, due to the Board's familiarity with the problems and its experience in the administration of the Act." (at p. 403-404).

In <u>Ohio Power Co. v. N.L.R.B.</u>, 176 F.2d 385, 287 (6th Cir. 1949) the Court held that responsibility of an industrial employer,

" ... includes judgment, skill, ability, capacity, and integrity, and is implied by power. ..." (at p. 387).

Based upon the undisputed facts before us and the legal authorities and principles enunciated set forth, we are of the opinion that Mr. Penn did not legally qualify at the time of his appointment as representative of the employer class of persons eligible for membership on the Industrial Accident Board. Article 8307, Section 2, surely contemplates more than a de minimis of experience, background and acts as an employer. We do not find any of this of which a court would recognize in Mr. Penn's record before us. Under the undisputed facts he had only a contract of employment, under which he might have qualified as an employer. He had no prior experience as an employer; he performed no act under his contract as an employer; he testified he "did nothing." He was paid for one day only by his employer, apparently for Saturday. Nothing was expected of him until the following Monday; he was not on a "stand-by" basis for the performance of any duty until Monday, the day upon which he terminated his contract, without pay apparently for Monday.

The post of a director or executive officer of a corporation necessarily carries with it certain duties contemplated to be performed as to the corporate affairs and custody and use of corporate accounts. Such an officer is necessarily under an obligation of trust and confidence to the corporation or its stockholders and must act in good faith and for the interests of the corporation, with due care and diligence and within the scope of his authority. 13 Am.Jur. 939, Corporations, Sec. 985.

We do not find these necessary elements present in the appointment of Mr. Penn to the post of Executive Vice-President of the corporation, since from the facts presented such appointment and acceptance was done solely for the purpose of qualifying him for appointment to the Industrial Accident Board. Admittedly, it was done under circumstances and at a time when he would have no duties to perform over the weekend. He was not instructed to do anything and he did not do anything. Neither he nor the corporation can be deemed to have possessed the qualifications to meet the legal requirements of a corporate director or executive officer. The requirement of legal responsibility is not shown. As stated in McFarland v. George, 316 S.W.2d 662, 671 (St. Louis Ct. of App. 1958),

"... Legal responsibility is the state of one who is bound or obliged in law and justice to do something. Behinke v. New Jersey Highway Authority, 13 N.J. 14, 97 A.2d 647, 654. In Crockett v. Village of Barne, 66 Vt. 269, 29 A. 147, the Court said: 'One's duty is what one is bound or under obligation to do. One's responsibility is its liability, obligation, bounden duty.' The word 'responsibility' ... means the doing of something, any other meaning would render the rule meaningless. ..."

Since Mr. Penn did nothing it cannot be said that he ever exercised the duties and responsibilities requisite for qualification as an employer. A court will look through form to substance and disregard all forms of pretense. Whatever conversation Mr. Penn had or agreements he had, his service must therefore be considered only "de minimis" or insufficient in law, since under this test the law will take no notice of and not concern itself with such small or trifling matters.

## S U M M A R Y

Mr. Richard Penn was not legally qualified for membership on the Industrial Accident Board as the employer's representative on the Board when he was appointed by the Governor on October 6, 1969. Under the undisputed facts he performed no act, and was not authorized to perform any act and was not on a stand-by basis, for the one day for which he was paid and which constitutes the sole basis for his qualification.

Very truly yours,

CRAWFORD C. MARTIN
Attorney General of Texas

Prepared by W. E. Allen
Assistant Attorney General

APPROVED:
OPINION COMMITTEE

Kerns Taylor, Chairman
Arthur Sandlin
Lewis Jones
Scott Garrison
Max Hamilton

MEADE F. GRIFFIN
Staff Legal Assistant

ALFRED WALKER
Executive Assistant

NOLA WHITE
First Assistant